IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| EDWARD KAHL, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 230010R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed Defendant's Notice of Deficiency Assessment dated October 12, 2022, for the 2015 tax year (Notice of Assessment). Defendant submitted a cross-claim, asking for additional tax, penalty, and interest greater than the amounts shown in the Notice of Assessment. (Def's Mot at 3.)

Based on some common business ownership interests, a joint trial was held with *Nidal Kahl and Panayiota Kahl v. Department of Revenue*, TC-MD 230009R, and *Daniel Kahl v. Department of Revenue*, TC-MD 230011R. Trial was held in the courtroom of the Oregon Tax Court from January 27, 2025, through January 31, 2025, and on February 5, 2025. An additional trial date for Daniel Kahl was held remotely on May 20, 2025.

Hertsel Shadian, Attorney at Law, represented Nidal and Panayiota Kahl, and co-represented Daniel Kahl. Shawn Bargouti (Bargouti), Certified Public Accountant, represented Plaintiff and co-represented Daniel Kahl.[1] Plaintiff and Bargouti testified on behalf of Plaintiff. Plaintiffs also called Defendant's auditor, Michelle Warren (Warren), as an adverse witness. Patrick Rieder and Sam Zeigler, Assistant Attorneys General, represented Defendant and called

---

[1] In this Decision, Plaintiff used singularly refers to Edward Kahl, and Plaintiffs used plurally refers to Edward Kahl, Nidal Kahl, Panayiota Kahl, and Daniel Kahl.

Warren as a witness.   Plaintiffs' Exhibits PE 1 to PE 3763 and PR 1 to PR 13 were admitted into evidence.

Defendant's Exhibits DE 1 to DE 3294 and DR 1 to DR 19 were admitted into evidence. Per stipulation of the parties, the court will not consider the additional commentary contained in the rebuttal exhibits and will only focus on the numbers contained therein.

## I.  INTRODUCTION

These consolidated appeals arise from related business activities involving members of the Kahl family.  Although the cases were tried together due to overlapping ownership interests and shared evidentiary issues, this appeal concerns a narrower set of activities attributable to Plaintiff and the two businesses in which he held a majority ownership interest.  Plaintiff's interests in certain of the other business entities at issue in the consolidated cases were more limited than that of other related taxpayers, so evidence presented on those businesses is found in *Nidal Kahl and Panayiota Kahl v. Department of Revenue*, TC-MD 230009R.

The court encountered the same fundamental difficulties across the consolidated matters: Plaintiffs' books and records were incomplete, disorganized, and, in many instances, reconstructed after-the-fact.  Given those conditions, the court relies on the representatives' exhibits and testimony to evaluate the claimed income and expenses, rather than attempting to catalogue each document individually.

Prior to trial, the court determined that Defendant's spreadsheets would serve as the foundational reference materials for the evidentiary phase of the proceedings.  Accordingly, the court conditioned the admission of Plaintiffs' exhibits on the use of those spreadsheets as the analytical baseline for organizing the evidence.[2]

---

[2] The court conditioned admittance of Plaintiffs' exhibits pursuant to ORS 305.501(4) (statutory or technical rules of evidence are not required in the Magistrate Division) and *Reed v. Dept. of Rev.*, 310 Or 260, 270,

## II.  STATEMENT OF FACTS

This case involves the income and expenses of Plaintiff's two businesses: Dancing Zorba and EdTel Networks (EdTel).[3]  The facts and circumstances surrounding the income and expenses for each business are distinct and require separate analysis.   Kahl holds a bachelor's degree in communications with an emphasis in Information Systems and Quantitative Analysis. He subsequently completed a master's degree in organizational management.

Following his education, Kahl worked in telecommunications consulting, including engagements with large corporate clients.  He further advanced to roles involving business intelligence, systems automation, and cross-functional technical analysis.

A.    *Dancing Zorba*

Dancing Zorba is a festival-based food service enterprise that operated as a recurring vendor at regional events, including Taste of Tacoma, Bite of Seattle, and Bumbershoot. Dancing Zorba operated multiple booths at festival events, including booths serving Greek and Mediterranean foods, as well as separate seafood-focused booths operating under the names "Seattle Seafood Company" and "Eduardo's Famous Fish Tacos."  Festival operations required mid-week travel for setup, transporting equipment, staging product deliveries, meeting regulatory requirements, and configuring refrigeration and propane systems.  Plaintiff testified that each festival ran for three days and required substantial labor and operational effort throughout.

/ / /

---

798 P2d 235 (1990) (Peterson, J., concurring) (the Tax Court can require a taxpayer "to put the evidence into some minimally coherent form before" its admission).

[3] Plaintiff owns a 70 percent interest in Dancing Zorba and a 100 percent interest in EdTel.  (*See* DE 871, 2634, 2636.)

Festival booths were staffed by temporary labor, often students from the University of Washington, who assisted with food preparation, cooking, cashiering, and supply management. Festival labor was paid exclusively in cash, and Plaintiff described maintaining a handwritten notebook listing the names and hours of temporary workers, who were typically paid at the end of each festival day or at the close of the weekend. Plaintiff did not produce this notebook at trial.

Plaintiff testified that Dancing Zorba conducted much of its business in cash and that his attempt to use an internet payment processing platform, Square, did not work efficiently. He did not deposit all cash proceeds from festival events into the business account immediately, instead retaining cash in the till to pay expenses as they came due. Bank records for the Dancing Zorba account reflect deposits of $8,320 in June 2015 (PE 1294); $23,500 in July 2015 (PE 1299); $7,040 in August 2015 (PE 1302); and $6,000 in September 2015. (PE 1304.) The account also reflects a deposit of $2,846.30 in October 2015. (PE 1307.)

Plaintiff testified that primary food distributors, including Alexis Foods and Pacific Seafood, were commonly paid in cash, often on short payment terms immediately following each festival. He further testified that on-site purchases during festivals, including ice, produce, propane, emergency supplies, and water service fees were also paid in cash because such purchases were made quickly and frequently during high-volume periods.

Plaintiff reported cost of goods sold totaling $39,680.26 and produced receipts and related documents, some of which include handwritten notations or signatures indicating payment. (*See* PE 1313-1328.) He also reported additional expenses totaling $3,845.80 (PE 1333) and produced supporting receipts. (PE 1334-1370.)

/ / /

Plaintiff reported festival expenses, including fees and permits, totaling $17,123.70. (PE 1371.) He testified that certain festivals required payment of a percentage of gross sales, in addition to fixed booth charges, and that these percentage-based fees—typically around 15-16 percent—were customarily paid in cash directly to the festival operator. No evidence was presented to substantiate the payment of such fees or the basis for their calculation. Plaintiff further testified that his timely and honest cash settlement of these fees was an important factor in how he secured invitations to subsequent events.

B.    *EdTel*

EdTel is a consulting business that Plaintiff formed in 2006 to provide telecommunications and data-related services to corporate clients. During the tax year at issue, he performed project-based work for clients including Time Warner and ACN, which required extensive out-of-state travel and the delivery of technical and analytical services involving data systems and reporting.

Plaintiff testified that his consulting work involved travel typically following a pattern of three weeks on-site and one week remote. His work regularly required travel to Washington, D.C.; Dallas-Fort Worth, Texas; and Charlotte, North Carolina, with flights generally departing on Sundays and returning on Thursday nights. Plaintiff also testified that he traveled through Seattle for business development meetings due to longstanding industry relationships.

Plaintiff provided a subcontractor agreement between EdTel and Insys Group, Inc. dated August 2015. (PE 1607-1615.) That agreement provided that Plaintiff might be entitled to reimbursement for travel and business expenses. (PE 1608.) Plaintiff testified that he filed electronic reports, including receipts, and was reimbursed for many travel-related expenses by his clients. Plaintiff testified that gross deposits for work from his clients would necessarily have

included the reimbursements, which Defendant included in income. The record does not clearly establish whether Plaintiff was reimbursed for any portion of his travel or related expenses, and no documentation was provided to show how any such reimbursements were treated.

EdTel's 2015 tax return reported $71,782 in travel expenses and $16,925 in Meals and Entertainment (calculated at 50 percent of expenses incurred). (PE 2018.) Plaintiff provided receipts for selected airfare but maintained no log detailing the business purpose for any trip. For example, he submitted a receipt dated August 17, 2015, for $297.60, but there is no indication of location or business purpose. (PE 1616.) He also provided a receipt dated August 20, 2015, for a flight from Charlotte, North Carolina, to Portland, Oregon, in the amount of $382.00, which he testified was consistent with his four-day travel schedule. (PE 1617.) However, no business purpose was indicated. Plaintiff provided numerous receipts for hotel, rental car, and food expenses, but no log or other records explaining their business purpose. (PE 1619-1699.)

C.      *Testimony of Warren*

Warren testified that she is a Manager I with the Oregon Department of Revenue and has served as an auditor for approximately seventeen years. She became involved in this case as a result of filing-enforcement leads received by Defendant. Warren testified that she was familiar with the tax returns and supporting documentation provided for Plaintiff and the entities at issue—EdTel and Dancing Zorba—and that she prepared multiple workbooks summarizing Defendant's analysis.

1.      *Dancing Zorba*

With respect to Dancing Zorba, Warren explained that her understanding of the business was based primarily on spreadsheets and receipts provided by Plaintiff. She understood Dancing

Zorba to be a food operation participating at large events in Washington, though she was uncertain at first how many booths or food stations were involved because no complete books or contemporaneous operational records were produced. She testified that Plaintiff's oral testimony at trial was the first clear assertion that more than two booths or food stations were operated during the relevant festival periods.

Regarding the documentation provided by Plaintiff, Warren testified that she received a set of spreadsheets that appeared to have been created after Plaintiff filed his tax return. She noted that many of the amounts listed in those spreadsheets did not match the expenses claimed on the filed return, and numerous categories from the return contained no supporting entries at all. She testified that this mismatch indicated to her that the documents provided were incomplete and were not contemporaneous books and records.

Warren also explained that many receipts included business names different from Dancing Zorba, such as Park Place Café, Seattle Seafood Company, Pho Kit, and other unrelated entities. She testified that Defendant had no information establishing how these entities related to Plaintiff or whether the expenses listed on these receipts were for Dancing Zorba, another business, or unrelated activities. She stated that Defendant requested clarification regarding these discrepancies but received none.

Warren further testified that most expenses claimed for Dancing Zorba were paid in cash and that Plaintiff provided no documentation linking those cash payments to reported income. She stated that, for cash-based businesses, Defendant requires contemporaneous cash logs, point-of-sale records, or other verifiable accounting records to confirm that the cash used to pay expenses was actually part of reported income. She testified that Plaintiff supplied no daily sales records, cash summaries, employee payroll logs, or other income-tracking documents and that

Defendant therefore could not verify whether the cash used to pay expenses was included in Plaintiff's income.

Concerning festival fees, Warren testified that she conducted independent research into Bite of Seattle's fee structure and learned that the festival typically charges vendors a percentage-of-sales fee. She stated that Defendant received no records from Plaintiff showing how Dancing Zorba reported, calculated, or paid any such percentage-based fees or whether those fees corresponded to Plaintiff's claimed sales or deposits.

Regarding Dancing Zorba's reported income, Warren testified that Plaintiff reported approximately $74,509 in total income on the return but that deposits into the Dancing Zorba bank account totaled only about $48,000. (*See also* DE 2629; PE 1294, 1299, 1302, 1304, 1307.) She testified that without contemporaneous income records, such as daily sales logs, Defendant could not verify Plaintiff's claimed $108,263 in gross receipts or determine how much of the cash used to pay expenses related to business income was actually earned during the festival periods. (*See also* DE 2629.)

2.    *EdTel*

With respect to EdTel, Warren testified that she received no detailed books or records for income, expenses, or invoicing and that the only source of income verification available to her was the bank-deposit analysis she prepared. She testified that Plaintiff provided no records identifying contracts, invoices, receipts, or reimbursement statements linking deposits to specific business activities for EdTel. She also testified that she had concerns that Plaintiff may have deducted expenses for which he was reimbursed but that she could not verify this because no reimbursement records or client invoices were provided.

/ / /

Warren testified that only one portion of EdTel's travel expenses—those clearly tied to Charlotte, North Carolina—could be confidently traced to an established client project and that she allowed those amounts. She testified that other travel receipts lacked client identification, itinerary information, or travel logs and that some flights or hotel stays were to cities unrelated to any known EdTel client. She testified that such expenses could not be verified as business-related under the strict substantiation rules.

Finally, Warren testified that she prepared a comprehensive summary workbook reflecting all adjustments across entities and tax years. She testified that the summary reconciled Plaintiff's original returns, audit results, and conference-level review and was designed to show how each adjustment flowed through to Plaintiff's personal return. She testified that, based on the incomplete books and lack of verifiable records, Defendant concluded that a substantial portion of Plaintiff's claimed deductions could not be substantiated and therefore were disallowed. Relying on Warren's spreadsheets, Defendant filed an Amended Answer, increasing the amount sought from the Notice of Assessment.

## III. ANALYSIS

Oregon defines taxable income in the same manner as the Internal Revenue Code (IRC), subject to certain modifications not relevant here. ORS 316.007; ORS 316.022(6).[4] Under IRC section 162(a), a taxpayer may deduct ordinary and necessary expenses incurred in carrying on a trade or business. Conversely, IRC section 262(a) generally disallows deductions for "personal, living, or family expenses" not otherwise allowed under the IRC. Certain categories of business expenses, including travel and use of passenger vehicles, are subject to heightened substantiation requirements under IRC section 274(d). If a taxpayer fails to meet these requirements, the

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

deduction must be denied, regardless of whether the expense appears reasonable. *Schladweiler v. Comm'r*, 80 TCM (CCH) 681 (2000), 2000 WL 1690282 at *3 (US Tax Ct), *aff'd*, 28 F Appx 602 (8th Cir 2002).

In cases before this court, the party seeking affirmative relief bears the burden of proof and must establish their case by a "preponderance" of the evidence. ORS 305.427. This usually applies to taxpayers/plaintiffs; however, when Defendant seeks to further deny deductions or increase the assessment, as it is doing in this case, the burden of proof on that issue shifts to Defendant. *See Donohoe v. Dept. of Rev.*, TC-MD 150521N, 2016 WL 4446635 at *3 (Or Tax M Div, Aug 23, 2016). Deductions are a "matter of legislative grace" and the burden of proof— substantiation—is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Taxpayers are required to maintain records sufficient to establish the amount of their deductions. *See* IRC § 6001; Treas Reg § 1.6001–1(a).

One theme of this case involves estimation of expenses under a rule articulated in *Cohan v. Comm'r*, 39 F2d 540 (2nd Cir 1930). Under that doctrine, where a taxpayer establishes that deductible expenses were incurred but cannot substantiate the precise amounts, the court may approximate those expenses, bearing heavily against "the taxpayer whose inexactitude is of his own making." *Id*. at 544; *see also Vanicek v. Comm'r*, 85 TC 731, 742-43 (1985). However, the *Cohan* rule is not a substitute for proof; the taxpayer must first provide a rational evidentiary basis upon which estimates can be made. *Williams v. U.S.*, 245 F2d 559, 560-61 (5th Cir 1957).

There are two businesses at issue in this case with very different analytical challenges. Thus, the court will examine each business separately.

/ / /

A.      *Dancing Zorba*

Dancing Zorba is a festival-based food service business operating at large events in Washington.  The primary challenges with respect to this business activity arise from Plaintiff's incomplete records, the predominance of cash transactions, and the absence of reliable documentation tying cash receipts to expenditures.

Plaintiff's position is that he reported approximately $108,000 in gross receipts from festival operations and that those receipts necessarily required the incurrence of substantial expenses, including labor, food costs, and supplies.  He contends that, even if his recordkeeping was incomplete, the receipts and other documentation provided—particularly those relating to food purchases—establish a sufficient basis for the court to estimate expenses under the rule articulated in *Cohan*.  Plaintiff further argues that Defendant's decision to deny most of the purported business expenses—labor costs, cost of goods sold (the food), and supplies—is unreasonable in light of his gross sales.

The court has no doubt that Plaintiff incurred costs of goods sold, labor, and related operating expenses in conducting festival operations.  However, the *Cohan* doctrine permits estimation only where there is a reasonable evidentiary basis for doing so.  *See, e.g.*, *Williams*, 245 F2d at 560.  Here, the absence of reliable records of cash receipts and disbursements prevents the court from determining whether the claimed expenses were paid from reported income or from unreported cash receipts, or whether they merely reflect the disposition of cash already accounted for.  Without that threshold information, there is no reliable basis upon which to estimate expenses.

That limitation is particularly significant in the context of a cash-intensive business that fails to maintain basic records of receipts and disbursements.  In such circumstances, the absence

of reliable contemporaneous records not only obscures the amount of claimed expenses but also prevents the court from determining whether those expenses were paid from business receipts already reflected in reported income.

As the court observed in *Petzoldt v. Comm'r*, 92 TC 661, 689-90 (1989), where a taxpayer's records are inadequate or unreliable, the court may reconstruct income. However, the court is not required to accept unsubstantiated estimates of expenses or to make allowances without a reasonable evidentiary foundation. *Id*. Where the evidentiary record does not permit a rational allocation, the court declines to apply the *Cohan* doctrine.

Here, the only evidence of gross income consists of Plaintiff's testimony, which is not corroborated by documentary evidence. Plaintiff's business operated largely in cash, and the record contains no contemporaneous cash logs, sales summaries, or reconciliations tying receipts to deposits or expenditures. Plaintiff reported approximately $108,000 in gross cash receipts, yet deposits into the Dancing Zorba bank account total less than half that amount, and those deposits were made intermittently over several months rather than contemporaneously with festival operations. Furthermore, Plaintiff did not deposit all receipts into his bank account and instead used cash on hand to pay expenses.

As a result, the court is unable to determine whether the claimed expenses represent amounts paid from reported income or merely reflect the use of cash receipts that were not tracked or verified. The evidentiary gap precludes any reasonable approximation. Under these circumstances, there is no rational evidentiary basis upon which to estimate expenses, and application of the *Cohan* doctrine is not warranted.

The court next considers Plaintiff's EdTel business, which presents a different analytical framework. Unlike Dancing Zorba, where the issue was whether expenses could be estimated in

the absence of reliable records, the expenses at issue for EdTel are subject to the strict substantiation requirements of IRC section 274(d), which require specific documentation and do not permit estimation.

B. *EdTel*

IRC section 274(d) provides that travel, meals, and certain related expenses are subject to strict substantiation requirements. The statute disallows any deduction unless the taxpayer substantiates the amount, time, place, and business purpose of each expense by adequate records or sufficient corroborating evidence. *See also* Treas Reg § 1.274-5T(b)(2). These requirements leave no room for estimation, and courts have consistently held that the *Cohan* doctrine does not apply to expenses governed by section 274(d). *See Sanford v Comm'r*, 50 TC 823, 827-28 (1968), *aff'd sub nom*, 412 F2d 201 (2nd Cir 1969). Thus, even where it is likely that a taxpayer incurred travel expenses, deductions must be denied absent the required substantiation.

In this case, Plaintiff provided a limited number of receipts, primarily for airfare, but failed to maintain contemporaneous travel logs, itineraries, or records establishing the business purpose of the expenses or their relationship to specific clients or projects. Many receipts lack identifying information tying the travel to business activity, and some relate to locations not clearly connected to established client engagements. Without evidence establishing the required elements—particularly business purpose and business relationship—the court cannot allow the deductions.

Plaintiff provided a limited number of receipts for travel expenses that did not approach the nearly $100,000 in travel-related expenses claimed on his return. He did not maintain any log of business travel or of meals identifying the business purpose of the expense or the individuals involved. Although Plaintiff credibly testified that he incurred travel expenses in the

course of his work, his records do not satisfy the substantiation requirements of IRC section 274(d). To the extent Defendant allowed certain travel expenses associated with travel to Charlotte, North Carolina, those amounts will be allowed.

Plaintiff also testified that some travel expenses may have been reimbursed by his clients and that such reimbursements were included in income. At the same time, he contends that the related expenses were disallowed, effectively resulting in the inclusion of reimbursement income without the corresponding deduction. However, he provided no documentation showing whether reimbursements were received, in what amounts, or how they were treated. This lack of evidence prevents the court from determining whether the disallowed expenses relate to reimbursed or unreimbursed travel and further undermines the claimed deductions.

Accordingly, because Plaintiff has not met the strict substantiation requirements of IRC section 274(d), the claimed travel expense deductions must be disallowed, except to the limited extent already allowed by Defendant.

C.      *Defendant's Cross-Claim*

During the pre-trial phase of this case, Defendant amended its Answer to assert a cross-claim based on information obtained during discovery to increase Plaintiff's deficiency beyond the Notice of Assessment. To the extent that the increased deficiency places the burden of proof on Defendant, the court finds that Defendant has met that burden. Defendant's reconstruction of income and evaluation of claimed expenses—based on a bank deposit analysis, available records, and the absence of support documentation—is set forth in multiple spreadsheets admitted into evidence.

The court finds that Defendant's analysis is grounded in a systematic review of available records, including a bank deposit analysis, categorization of receipts, and reconciliation to the

filed returns. Defendant's spreadsheets reflect a detailed effort to account for each documented transaction and to incorporate the information provided by Plaintiff to the extent it could be verified.

Although the reconstruction is necessarily imperfect due to the absence of complete and contemporaneous records, those limitations are attributable to Plaintiff's recordkeeping rather than any deficiency in Defendant's methodology. In contrast to Plaintiff's largely uncorroborated assertions, Defendant's analysis provides the most reliable measure of income and allowable expenses in the record. Accordingly, the court concludes that Defendant has established the increased deficiency by a preponderance of the evidence.

## IV. CONCLUSION

After careful consideration, the court concludes that Plaintiff has not met his burden of substantiating the claimed business expense deductions for either Dancing Zorba nor EdTel. With respect to Dancing Zorba, the absence of reliable records of cash receipts and disbursements precludes application of the *Cohan* doctrine. With respect to EdTel, Plaintiff failed to satisfy the strict substantiation requirements of IRC section 274(d). The court further concludes that Defendant has met its burden with respect to the increased deficiency asserted in its cross-claim. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER THE DECISION OF THIS COURT that Defendant's cross-claim to increase the deficiency is granted.

_____
RICHARD D. DAVIS
MAGISTRATE

***To appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court.  Appeals are accepted by electronic filing; by mail at 1163 State Street, Salem, OR 97301-2563; and by hand delivery to 1241 State Street, Salem, OR, Floor 4R.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This document was signed by Magistrate Richard D. Davis and entered on July 2, 2026.***